UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN L. CONLEY,
    *Plaintiff*,

v.

JOHN ALDI, *et al.*,
    *Defendants.*

No. 3:18-cv-824 (VAB)

# INITIAL REVIEW ORDER AND RULING ON
# MOTION FOR LEAVE TO AMEND COMPLAINT

John Conley ("Plaintiff"), currently incarcerated at Carl Robinson Correctional Institution, filed a lawsuit while incarcerated at Corrigan-Radgowski Correctional Institute in Montville, Connecticut, against Security Risk Group Coordinator Aldi ("SRG Coordinator Aldi") and Warden Faucher in their individual and official capacities. Compl., ECF No. 1 (May 16, 2018).

Mr. Conley asserts claims under the Eighth and First Amendments. Mr. Conley has also filed a motion for leave to amend the Complaint to add Lieutenant Tommarrow as a new defendant. Mot. to Amend Compl., ECF No. 12 (May 16, 2019)).

For the reasons set forth below, Mr. Conley's Complaint will be **DISMISSED** with prejudice in part and without prejudice in part, and his motion for leave to amend the Complaint to add Lieutenant Tommarrow as a new defendant is **DENIED as moot.**

Mr. Conley's claims for monetary relief under 42 U.S.C. § 1983 against Warden Faucher and SRG Coordinator Aldi in their official capacities are **DISMISSED** with prejudice, and all claims against Defendants for injunctive relief will be **DISMISSED** with prejudice.

If Mr. Conley chooses to file an amended complaint, he may only allege claims for monetary relief against the Defendants in their individual capacities.

Mr. Conley's claims under the First Amendment against Warden Faucher and SRG Coordinator Aldi are **DISMISSED** without prejudice.

Mr. Conley's claims under the Eighth Amendment against Warden Faucher and SRG Coordinator Aldi related to hygiene, unsanitary conditions, lack of exercise, and isolation are **DISMISSED** without prejudice.

**I.    BACKGROUND**

On November 2, 2017, Mr. Conley allegedly arrived at the Security Risk Group ("SRG") program at Corrigan Correctional Institution ("Corrigan"). Compl. ¶ 6. Inmates at Corrigan who are assigned to the SRG program are housed in E-Pod Unit or B-Pod Unit. *Id.* ¶ 8. Mr. Faucher allegedly was the Warden during Mr. Conley's confinement at Corrigan. *Id.* ¶ 7.

As of February 8, 2018, Mr. Conley allegedly had not been involved in any gang activity, had not received a disciplinary report for over a year, and was scheduled to "graduate" from the phase program on March 28, 2018. *Id.* ¶ 10. On February 8, 2018, SRG Coordinator Aldi allegedly regressed Mr. Conley to a prior phase of the SRG program because he had been stockpiling his mental health medications. *Id.* ¶ 9. Mr. Conley claims that he allegedly was unaware that he could not stockpile his medications because upon his arrival at Corrigan, he did not receive a disciplinary report for bringing medications that he had stockpiled with him. *Id.* ¶¶ 9–10. Mr. Conley's phase regression allegedly meant that he was required to complete an additional six months in the SRG program. *Id.*

Mr. Conley claims that beginning on February 12, 2018, he experienced various conditions that deprived him of basic human needs. *Id.* ¶ 11. On that date, the toilet in his cell allegedly had a severe leak. *Id.* There allegedly was no cold water in his cell for a period of weeks. *Id.* As of May 9, 2018, the date of the filing of the Complaint, the sink in Mr. Conley's cell was allegedly clogged and the toilet reeked of urine and mold. *Id.* Prison officials allegedly issued several work orders to fix the toilet, but the maintenance department neglected to make the necessary repairs. *Id.* The leaking toilet allegedly caused potentially slippery conditions in Mr. Conley's cell. *Id.*

From February 22, 2018, until February 27, 2018 and from March 2, 2018, until March 23, 2018, prison officials allegedly restricted Mr. Conley's opportunities to exercise or recreate outside of his cell. *Id.* ¶¶ 13, 19. He contends that the time periods when he was permitted to exercise varied from day to day and at times there were gaps of twenty-nine to thirty hours between exercise periods. *Id.* ¶ 19. During one four-day period and during one three-day period, Mr. Conley alleges he was unable to "practice" personal hygiene. *Id.* ¶¶ 3, 19.

Before his confinement in the SRG program at Corrigan, Mr. Conley allegedly suffered from a traumatic brain injury and post-traumatic stress disorder. *Id.* ¶ 22. For twelve days during April 2018 and five days during May 2018, prison officials allegedly isolated Mr. Conley in his cell. *Id.* ¶¶ 3, 19. The isolated nature of his confinement in the SRG program allegedly "reactivated" his post-traumatic stress disorder and caused him to experience anxiety attacks, explosive anger disorders, racing thoughts, and migraine headaches. *Id.* ¶ 22. Medical staff at Corrigan allegedly prescribed medications to treat Mr. Conley's symptoms, and medical and mental health conditions. *Id.* He also met with a counselor twice a week for therapy sessions. *Id.*

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III. DISCUSSION

Mr. Conley claims that Warden Faucher and SRG Coordinator Aldi subjected him to unsanitary conditions, periods of isolation, and limited opportunities to exercise or recreate, during his confinement at Corrigan from February 2018 to May 2018. He seeks declaratory, injunctive, and monetary relief.

The Court construes Mr. Conley's claims as claims under 42 U.S.C. § 1983, which provides a "remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." *Hafer v. Melo*, 502 U.S. 21, 27 (1991) (quoting *Monroe v. Pape*, 365 U.S. 167, 172 (1961)).

To state a claim under § 1983, a plaintiff must allege facts showing that the defendant, a person acting under color of state law, deprived him of a federally protected right. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982).

### A. Relief Available Under § 1983

Mr. Conley has sued Warden Faucher and SRG Coordinator Aldi in their official and individual capacities for declaratory, injunctive, and monetary relief under § 1983.

In suits for monetary relief, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Hafer*, 502 U.S. at 27 (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). In suits for injunctive relief against a state agency under § 1983, a plaintiff must "follow the requirement, established in *Ex Parte Young*," to "name as defendant a state official rather than the state or a state agency directly." *Santiago v. N.Y. State Dep't of Corr. Servs.*, 945 F.2d 25, 32 (2d Cir. 1991) (dismissing claims for injunctive relief brought by a state DOC employee against the DOC) (citing *Ex Parte Young*, 209 U.S. 123 (1908)); *see also Alden v. Maine*, 527 U.S. 706, 756 (1999) (recognizing that only arms of the State can assert the State's immunity); *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 360 (2006) (noting that Virginia institutions of higher education are considered arms of the state entitled to sovereign immunity).

A plaintiff may bring a claim for monetary damages against state officers in their personal capacities under § 1983. *Hafer*, 502 U.S. at 27 (citing *Will*, 491 U.S. at 71) ("[O]fficers sued in their personal capacity come to court as individuals. A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term 'person.'").

6

The Supreme Court has held that officers of the state sued for damages in their official capacity are not "persons" under § 1983. *Hafer*, 502 U.S. at 27 (citing *Will*, 491 U.S. at 71). However, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).

Mr. Conley sues Warden Faucher and SRG Coordinator Aldi in both their individual and official capacities for monetary relief. Mr. Conley, however, cannot seek monetary damages from these Defendants in their official capacities for violations of his rights under the Eighth Amendment.

Because these Defendants, in their official capacities, are not "persons" under § 1983, Mr. Conley's claims for damages against them in their official capacities will be dismissed. *See* 28 U.S.C. § 1915A(b)(2) (in an initial review of a civil action by an incarcerated person, "the court shall . . . dismiss . . . any portion of the complaint, if the complaint—(2) seeks monetary relief from a defendant who is immune from such relief.").

Mr. Conley also sues Warden Faucher and SRG Coordinator Aldi in their individual and official capacities for declaratory and injunctive relief. Mr. Conley's allegations involve conduct by the Defendants that took place at Corrigan. Mr. Conley, however, is no longer at Corrigan, having been transferred to Carl Robinson Correctional Institute on August 13, 2019. Notice of Change of Address, ECF No. 13 (Aug. 15, 2019).

To the extent that Mr. Conley seeks injunctive relief, this relief is only available against Defendants who are involved with his care at his current institution. *See P.R. Aqueduct and*

*Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (recognizing that "an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."); *see also Sossamon v. Texas*, 563 U.S. 277, 304 (2011) (noting that "[a] number of . . . suits seeking injunctive relief have been dismissed as moot because the plaintiff was transferred from the institution where the alleged violation took place prior to adjudication on the merits").

Accordingly, Mr. Conley's claims for declaratory and injunctive relief against the Defendants at Corrigan—Warden Faucher and SRG Coordinator Aldi—will be dismissed with prejudice. *See* 28 U.S.C. § 1915A(b)(1) (in an initial review of a civil action by an incarcerated person, "the court shall . . . dismiss . . . any portion of the complaint, if the complaint—(1) . . . fails to state a claim upon which relief may be granted.").

The Court now will review whether Mr. Conley's claims for damages under § 1983 against Warden Faucher and SRG Coordinator Aldi in their individual capacities can proceed.

    B.  **The Eighth Amendment Claims**

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[]" or posed "a substantial risk of serious harm" to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see Rhodes v. Chapman*, 452 U.S. 337,

8

347 (1981) ("Conditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment."). Although the Constitution does not require "comfortable" prison conditions, it does not permit prison officials to maintain conditions which inflict "unnecessary and wanton pain" or which result in the "serious deprivation of basic human needs . . . or the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.

The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (deprivation of identifiable human needs such as food, warmth, or exercise may establish Eighth Amendment violation); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989) (food, clothing, shelter, medical care, and reasonable safety are examples of basic human needs); *but see Rhodes*, 452 U.S. at 348 (double celling, limited work hours, and delay before receiving education are not punitive deprivations that establish an Eighth Amendment violation).

To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, they knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *Farmer*, 511 U.S. at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to the inmate health or safety . . . ." *Id.* at 837. The subjective element requires that the inmate allege that the defendants

9

acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280.

Mr. Conley identifies a number of conditions to which he was exposed during his confinement in the SRG units at Corrigan from February 2018 to May 2018, including a leaky toilet, isolation, and limited opportunities to recreate or exercise.

### 1. Hygiene

Conley alleges that he was unable to "practice" personal hygiene for a three-day period and a four-day period. Compl. ¶¶ 1, 19. He does not further elaborate.

Courts have held that occasional or temporary deprivations of hygiene items do not constitute deprivations of basic human needs to meet the objective component of the Eighth Amendment. *See Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003) (deprivation of "toiletries for approximately two weeks—while perhaps uncomfortable" did not violate Eighth Amendment); *Davidson v. Murray,* 371 F. Supp. 2d 361, 372 (W.D.N.Y. 2005) (finding that an Eighth Amendment violation was not established, based upon conditions "amount[ing] to no more than occasional or temporary deprivations of personal hygiene items, with no . . . indicat[ion] that plaintiff suffered any 'specific deprivation of a single human need' . . . , or other accompanying harm" (citation omitted)); *Fernandez v. Armstrong,* No. 3:02-cv-2252 (CFD), 2005 WL 733664, at *5–6 (D. Conn. Mar. 30, 2005) (up to 16-day deprivation of toothbrush, toothpaste, soap, and shampoo did not violate the Constitution); *McNatt v. Unit Manager Parker,* No. 3:99-cv-1397 (AHN), 2000 WL 307000, at *4 (D. Conn. Jan. 18, 2000) (finding no Eighth Amendment violation when inmates endured stained, smelly mattresses; unclean cell; no bedding for six days; no cleaning supplies for six days; no toilet paper for one day; no toiletries

or clothing for six days; no shower shoes; dirty showers; cold water that did not function properly; and smaller food portions); *Mahase v. City of New York,* No. 96 CV 6105, 2000 WL 263742, at *6 (E.D.N.Y. Jan. 5, 2000) (noting that "short-term confinement under unsanitary or uncomfortable conditions, without more, typically does not amount to a constitutional violation").

Accordingly, Mr. Conley's alleged inability to "practice personal hygiene" for two isolated, short-term periods fails to state a violation of Mr. Conley's Eighth Amendment rights and will be dismissed without prejudice.

### 2. Unsanitary Conditions

"[W]e have long recognized that unsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment." *Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013) (where there was "so much urine on the floor and sometimes on the toilet that the toilet required cleaning at least 15–20 times per day. . . . urine or defecation would splatter to the floor. . . . [and] inmates were not provided sufficient cleaning supplies or equipment to keep the toilet and surrounding area clean"); *see also Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003) ("[T]his court and other circuits have recognized that deprivation of toiletries, and especially toilet paper, can rise to the level of unconstitutional conditions of confinement. . . ."); *see also, e.g.*, *Atkins v. Cty. of Orange*, 372 F. Supp. 2d 377, 406 (S.D.N.Y. 2005) ("The failure to regularly provide prisoners with . . . toilet articles including soap, razors, combs, toothpaste, toilet paper, access to a mirror and sanitary napkins for female prisoners constitutes a denial of personal hygiene and sanitary living conditions." (internal quotations marks and citations omitted)).

Mr. Conley alleges that the toilet in his cell leaked and smelled of urine and mold and that he did not have cold water in his cell for a period of weeks. Compl. ¶ 11. He suggests that leaky toilet caused potentially slippery conditions in his cell. *Id.* Mr. Conley's allegations, however, do not show that his conditions were egregious enough to deprive him of a basic human need under Second Circuit precedent.

Accordingly, this claim will be dismissed without prejudice.

### 3. Restricted Exercise

The Second Circuit has recognized that "the Eighth Amendment requires that prison inmates be allowed some out-of-cell exercise." *Williams v. Greifinger*, 97 F.3d 699, 704 n.5 (2d Cir. 1996). Prison officials may limit the right to out-of-cell exercise "where there is a valid safety exception or certain unusual circumstances." *Id.* at 704.

Mr. Conley alleges that from February 22, 2018, until February 27, 2018, and from March 2, 2018, until March 23, 2018, prison officials "restricted [him] from exercise." Compl. ¶¶ 13, 19. He contends that the periods during which he was permitted to exercise or go to recreation varied from day to day each week and that during some weeks there were gaps of 29 to 30 hours between exercise periods. *Id.* ¶ 19. But Mr. Conley has not alleged that the defendants deprived him of the opportunity to ever engage in out of cell exercise. Nor has he alleged that he was unable to exercise inside of his cell during the time periods that he could not exercise out of his cell. *See Shakur v. Sieminski,* No. 07-cv-1239 (CFD), 2009 WL 2151174, at *4–6 (D. Conn. July 15, 2009) (observing that, if an incarcerated person has the opportunity to exercise either in his cell or outside of his cell, prison officials have not violated the inmate's Eighth Amendment right to basic human needs (citations omitted)).

12

Mr. Conley thus has failed to assert facts to meet the objective prong of the Eighth Amendment standard.

Accordingly, any Eighth Amendment claim based on the inability to engage in exercise or recreation outside of his cell on a regular basis will be dismissed without prejudice.

4. **Isolation**

Courts have found that isolation or solitary confinement, when extended, can sometimes constitute cruel and unusual punishment under the Eighth Amendment. *See, e.g.*, *Reynolds v. Arnone*, 402 F. Supp. 3d 3, 11 (D. Conn. 2019) (finding, on summary judgment, that twenty-three years in solitary confinement violated the incarcerated person's Eighth Amendment rights, where there was evidence of psychological harm); *Porter v. Clarke*, 923 F.3d 348, 353 (4th Cir. 2019), *as amended* (May 6, 2019) ("The challenged conditions of confinement on Virginia's death row—under which Plaintiffs spent, for years, between 23 and 24 hours a day alone, in a small . . . cell with no access to congregate religious, educational, or social programming—pose a substantial risk of serious psychological and emotional harm."); *cf. Tuttle v. Semple*, No. 3:17-cv-02037 (JAM), 2018 WL 2088010, at *6 (D. Conn. May 4, 2018) (observing, in a case where the plaintiff was placed in solitary confinement for one year, that "[s]ubstantial authority suggests that the use of solitary confinement may cause grave harm, especially to inmates who have mental illness," but ultimately granting Defendants qualified immunity (citations omitted)).

Mr. Conley alleges that he was isolated in his cell on April 4, 2018; on April 11, 2018; from April 18, 2018, to April 23, 2018; from April 27, 2018, to May 1, 2018; and from May 7, 2018, to May 10, 2018. Compl. ¶¶ 13, 22. He contends that these periods of isolation have exacerbated his mental health conditions. *Id.* He concedes that mental health officials at Corrigan

13

prescribed medications for his conditions and provided him with therapy during these time periods. *Id.* ¶¶ 22–23.

Mr. Conley's alleged isolation thus did not last years or even weeks. Furthermore, he has not alleged that this isolation deprived him of any basic need, nor has he alleged facts to demonstrate that Defendants were aware of this serious deprivation and failed to take steps to remedy the situation.

Accordingly, Mr. Conley's Eighth Amendment claim related to his alleged isolation in his cell on certain days for short periods of time in April and May 2018 will be dismissed without prejudice.

### C. First Amendment

Mr. Conley contends that Warden Faucher and SRG Coordinator Aldi violated his First Amendment rights "thus, discrimination quasi factors." Compl. ¶¶ 30, 35. The Court cannot discern the basis of Mr. Conley's First Amendment claim. But based on what is alleged, Mr. Conley has failed to state a claim of a violation of Mr. Conley's First Amendment rights.

Accordingly, Mr. Conley's First Amendment claim will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### D. MOTION TO AMEND

Under Federal Rule of Civil Procedure 15(a)(1)(B), a party may amend its complaint only once as a matter of course within twenty-one (21) days after service of a pleading that is responsive to the complaint or the service of a motion to dismiss, motion for a more definite statement, or motion to strike under Rules 12(b), (e), and (f). Fed. R. Civ. P. 15(a).

Mr. Conley seeks to add Lieutenant Tommarrow as a defendant, the Unit Manager of the SRG program at Corrigan in 2018, allegedly responsible for inmates confined in E-Pod Unit. Mr. Conley contends that Lieutenant Tommarrow violated his Eighth Amendment rights but includes no facts regarding the specific conduct of Lieutenant Tommarrow or how that conduct constituted a violation of the Eighth Amendment. Thus, as alleged in the motion to amend, Mr. Conley fails to state a claim that violated his constitutional or federally protected rights and this proposed amendment will be denied.

But the Court will permit Mr. Conley until **May 1, 2020** to file an amended complaint to assert claims against Lieutenant Tommarrow regarding the conditions of confinement at Corrigan from February 2018 to May 2018. By that same date, Mr. Conley also may re-assert and clarify his Eighth Amendment confinement claims related to personal hygiene, lack of exercise/recreation, and isolation that the Court has dismissed without prejudice.

## ORDERS

The Court enters the following orders:

**(1)** Mr. Conley's claims for injunctive and declaratory relief, and his claims for monetary damages against Defendants in their official capacities, are **DISMISSED** with prejudice under 28 U.S.C. § 1915A(b)(1).

**(2)** Mr. Conley's First Amendment claims against Warden Faucher and SRG Coordinator Aldi for monetary damages in their individual capacities are **DISMISSED** under 28 U.S.C. § 1915A(b)(1); and the Eighth Amendment claims related to personal hygiene, unsanitary and isolative conditions, and lack of exercise against Warden Faucher and SRG Coordinator Aldi

for monetary damages in their individual capacities are **DISMISSED** without prejudice under 28 U.S.C. § 1915A(b)(1).

**(3)** Because the Court is dismissing Mr. Conley's Complaint, the Motion to Amend, [ECF No. 12], seeking to add Lieutenant Tommarrow as a defendant, is **DENIED as moot**. If Mr. Conley wishes to file an Amended Complaint bringing claims for monetary damages against Defendants in their individual capacities, he may do so by **May 1, 2020**.

Mr. Conley must list all Defendants he wishes to name in the case caption and explain how each Defendant was involved in the alleged unconstitutional condition of confinement and how each condition deprived him of a basic human need or needs and indicate the dates on which or time periods during which each condition occurred.

**If Mr. Conley does not file an Amended Complaint by May 1, 2020, the Court will enter an order dismissing the Complaint with prejudice as to all Defendants and closing the case.**

**SO ORDERED** at Bridgeport, Connecticut this 23rd day of March, 2020.

```
        /S/
```
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE