UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN L. CONLEY,<br>    *Plaintiff*, | :<br>:<br>: |
| v. | :    Case No. 3:18-cv-00824 (VAB) |
| | : |
| JOHN ALDI, *et al.*,<br>    *Defendants*. | :<br>: |

**INITIAL REVIEW ORDER - AMENDED COMPLAINT**

John L. Conley ("Plaintiff"), currently resides in Hartford, Connecticut. He has filed an Amended Complaint naming Security Risk Group Coordinator Aldi ("SRG Coordinator Aldi"), Warden Faucher, and Lieutenant/Unit Manager Tommarrow ("Unit Manager Tommarrow") as defendants. Am. Compl, ECF No, 19, at 7.

For the reasons set forth below, the Court **DISMISSES** the Amended Complaint in part.

The requests seeking monetary damages for violations of Mr. Conley's Eighth Amendment rights by the defendants in their official capacities are **DISMISSED**. The request for declaratory relief, all Eighth Amendment claims asserted against SRG Coordinator Aldi, and the Eighth Amendment conditions claims related to the leaky and smelly toilet, the lack of cold running water, the clogged sink, and the denial of access to a telephone also are **DISMISSED**.

The Court will permit the Eighth Amendment claim related to Mr. Conley's confinement in his cell for 23 hours a day during a six-day period in February 2018, a twenty-two day period in March 2018, a five-day period in April 2018, and a fifteen-day period in May 2018 and the Eighth Amendment claim related to the deprivation of meaningful out of cell exercise during these same periods to proceed against Warden Faucher and Unit Manager Tommarrow in their

individual capacities and the Eighth Amendment shower deprivation claim to proceed against Unit Manager Tommarrow in his individual capacity.

I. BACKGROUND

As of February 12, 2018, Mr. Conley allegedly had progressed to phase three of the SRG program and was confined in a cell in E-Pod Unit at Corrigan-Radgowski Correctional Institution ("Corrigan-Radgowski"). *Id.* at 2-3 ¶¶ 4-5, 8. The toilet in his cell allegedly had a severe leak and reeked of urine and mold, the sink was clogged, and the faucet in the sink provided only hot water. *Id.* at 2 ¶ 5. Mr. Conley allegedly covered the toilet with blankets, sheets, and old jumpsuits. *Id.* Prison officials allegedly issued several work orders to fix the toilet, but the maintenance department neglected to make the necessary repairs. *Id.*

On February 23, 2018, February 25, 2018, March 12, 2108, May 25, 2018, May 31, 2018, July 22, 2018, and July 23, 2018, Mr. Conley allegedly spoke to Unit Manager Tommarrow about the leaky toilet that smelled of urine and mold and the clogged sink in his cell and requested additional liquid cleaner to maintain the cleanliness of his cell. *Id.* at 2 ¶ 6. Mr. Conley allegedly also spoke to Unit Manager Tommarrow about lockdowns that had occurred in his housing unit from February 22, 2018 until February 27, 2018, from March 2, 2018 until March 23, 2018, from April 18, 2018 until April 22, 2018, and from May 17, 2018 until May 31, 2018. *Id.* at 2-4 ¶¶ 6-7, 9, 12. On June 20, 2018, Mr. Conley allegedly spoke to Warden Faucher about the leaky and unsanitary toilet and clogged sink as well as the regular occurrence of lockdowns in his housing unit. *Id.* at 5 ¶ 13.

During the lockdowns, Mr. Conley allegedly was confined in his cell for at least twenty-three hours a day and either completely prohibited from exercising or participating in recreation

or permitted to exercise or recreated on a very limited basis. *Id.* at 3-4 ¶¶ 9-10. For five days during the period from March 2, 2018 to March 23, 2018, Mr. Conley allegedly was unable to shower or engage in hygiene practices. *Id.* at 4 ¶ 9; *id.* at 26-29. From April 18, 2018 to April 22, 2018, Mr. Conley allegedly could not shower or use the telephone. *Id.* at 4 ¶ 10.

Mr. Conley allegedly experienced mental distress due to the conditions of confinement and isolative lockdowns. *Id.* at 4 ¶¶ 11-12. Mental health providers at Corrigan-Radgowski allegedly treated Mr. Conley on several occasions for emotional distress. *Id.*

From March to July 2018, Mr. Conley allegedly experienced rashes all over his body and abscesses under his arms and in his groin area because he could not shower and was forced to wash himself in the sink. *Id.* at 4 ¶ 12. On July 12 and 15, 2018, medical providers allegedly treated Mr. Conley's rashes and abscesses. *Id.* at 5 ¶ 13.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III. DISCUSSION

Mr. Conley claims that Warden Faucher and SRG Coordinator Aldi subjected him to unsanitary conditions, periods of isolation, and limited opportunities to exercise/recreate and shower in violation of his Eighth Amendment rights. He seeks declaratory relief and monetary damages. Am. Compl. at 8.

### A. The Official Capacity Claims – All Defendants

Mr. Conley sues the defendants in their individual and official capacities. To the extent that he seeks compensatory and punitive damages from the defendants in their official capacities, the requests are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity).

Accordingly, the requests seeking monetary damages for violations of Mr. Conley's Eighth Amendment rights by the defendants in their official capacities will be dismissed under 28 U.S.C. § 1915A(b)(2).

Mr. Conley seeks a declaration that the defendants violated his federal constitutional rights during his confinement at Corrigan-Radgowski from February 2018 to July 2018. Under the doctrine of *Ex parte Young,* 209 U.S. 123 (1908), a plaintiff may seek prospective injunctive and declaratory relief to address an ongoing or continuing violation of federal law or a threat of a violation of federal law in the future. *See In re Deposit Ins. Agency,* 482 F.3d 612, 618 (2d Cir. 2007); *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000). In determining whether *Ex Parte Young* applies, "a court need only conduct a straightforward inquiry into whether the complaint

5

alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002) (internal quotation marks and citation omitted).

Mr. Conley has been released from the Department of Correction and currently resides in Hartford, Connecticut. His request for declaratory relief is addressed to conditions that occurred at Corrigan-Radgowski in 2018. Absent a request for relief to remedy ongoing violations of Mr. Conley's rights or a threat of a violation of his rights in the future, a declaration that the defendants violated his rights in the past is barred by the Eleventh Amendment. *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young*... to claims for retrospective relief.") (citations omitted).

Accordingly, the request for declaratory relief will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

B.   **The Claims Against SRG Coordinator Aldi**

The Second Circuit has recently clarified the standard to be applied to a claim of supervisory liability. *Tangreti v. Bachman*, 983 F.3d 609 (2d Cir. 2020). Before the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Second Circuit had identified five categories of conduct that would establish liability of supervisors for the conduct of a subordinate in a Section 1983 action. *Tangreti*, 983 F.3d at 616 (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). In *Iqbal*, however, the Supreme Court rejected a theory of supervisory liability that permitted a supervisor to be "held liable based on a lesser showing of

6

culpability than the constitutional violation requires." *Id.* (quoting *Iqbal*, 556 U.S. at 677) (internal quotation marks omitted). The plaintiff must "plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676).

In *Tangreti*, the Second Circuit held that, "after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* at 618 (quoting *Iqbal*, 556 U.S. at 676). At issue in *Tangreti* was an Eighth Amendment claim for deliberate indifference to safety. The court held that the plaintiff must show that the defendant violated the Eighth Amendment through her own conduct, not her supervision of others. *Id.* at 619.

Mr. Conley describes Defendant Aldi as the SRG superior supervisor and coordinator of the entire SRG program. Am. Compl. at 7 ¶ 32.

Mr. Conley does not allege that SRG Coordinator Aldi was present at Corrigan-Radgowski during his confinement there from February to July 2018. Nor does he include any factual allegations regarding the conduct of SRG Coordinator Aldi. Rather, he alleges that SRG Coordinator Aldi is responsible for implementing the SRG program as a rehabilitative program, but the program is not rehabilitative. *Id.* at 3 ¶ 8.

Accordingly, because Mr. Conley has alleged no facts to demonstrate SRG Coordinator Aldi's direct involvement in imposing the conditions that he experienced during his confinement at Corrigan-Radgowski from February 2018 to July 2018, the Eighth Amendment claims asserted against Aldi will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### B. The Claims Against Warden Faucher and Unit Manager Tommarrow

Mr. Conley identifies a number of conditions to which he was exposed during his confinement in phase three of the SRG program at Corrigan-Radgowski from February 2018 to July 2018, including a leaky and unsanitary toilet, a clogged sink, isolation, and limited opportunities to recreate, exercise, shower, and use the telephone.

In the context of a prisoner's conditions of confinement, those conditions that are "restrictive or even harsh" do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although the Constitution does not require "comfortable" prison conditions, it does not permit prison officials to maintain conditions which inflict "unnecessary and wanton pain" or which result in the "serious deprivation of basic human needs . . . or the minimal civilized measure of life's necessities." *Id*.

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[]" or posed "a substantial risk of serious harm" to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes*, 452 U.S. at 347. The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes,* 452 U.S. at 348.

To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, they knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that the inmate allege that the defendants acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

### 1. Hygiene

Mr. Conley alleges that he was unable to engage in personal hygiene practices and to shower for five days in March 2018 and five days in April 2018. Due to the lack of access to a shower, Mr. Conley had to use the sink in his cell to wash himself. He developed skin rashes and abscesses under his arms and in his groin area because he could not adequately wash himself. Unit Manager Tommarrow allegedly was aware of or responsible for the decision not to permit him to shower in March and April and Unit Manager Tommarrow allegedly knew of the rashes and abscesses that he suffered from because he could not shower. At this stage of the case, Mr. Conley has alleged sufficient facts to state a plausible claim that depriving him of the opportunity to shower during a five-day period in March 2018 and five-day period in April 2018 posed a serious risk of harm to his health.

Accordingly, the Court will permit this Eighth Amendment shower deprivation claim to proceed against Unit Manager Tommarrow in his individual capacity.

### 2. Unsanitary Conditions

In *Darnell v. Pineiro*, the Second Circuit stated that it "has repeatedly reiterated that

9

conditions of confinement cases involve fact-intensive inquiries." 849 F.3d 17, 31 (2d Cir. 2017). The Court explained that "[t]he severity of an exposure may be less quantifiable than its duration, but its qualitative offense to a prisoner's dignity should be given due consideration." *Id.* (citing *Willey v. Kirkpatrick*, 801 F.3d 51 (2d Cir. 2015). The conditions of confinement of a prisoner bringing a constitutional claim "must be assessed according to two components, severity and duration, on a case-by-case basis," *id.* at 30, as the Second Circuit has found that "bright-line durational requirement for a viable unsanitary-conditions claim" or a "minimal level of grotesquerie required," *id.* at 31 (quoting *Willey*, 801 F.3d at 68).

Mr. Conley alleges that the toilet in his cell leaked and smelled of urine and mold, the sink was clogged, and that he only had access to running hot water. Am. Compl. at 2 ¶ 5. He asserts that several requests were submitted to the maintenance department to fix the leaky toilet and clogged sink, but no repairs were made. *Id.* Prison officials allegedly provided Mr. Conley with blankets and sheets to place around the leaky toilet. *Id.* Mr. Conley has not alleged that the leaky and smelly toilet, the lack of cold running water, or the clogged sink posed a substantial risk of harm to his health. But "serious injury is unequivocally not a necessary element of an Eighth Amendment claim." *Willey*, 801 F.3d at 68. As a result, at this stage of the case, the Court need not engage in the fact intensive inquiry necessary to determine whether Mr. Conley's claims amount to a violation of his Eighth Amendment rights, but will address those issue at after discovery.

Accordingly, these Eighth Amendment conditions of confinement claims will not be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### 3. Exercise

The Second Circuit has recognized that "the Eighth Amendment requires that prison inmates be allowed some out-of-cell exercise." *Williams v. Greifinger*, 97 F.3d 699, 704 n.5 (2d Cir. 1996). Prison officials may limit the right to out-of-cell exercise "where there is a valid safety exception or certain unusual circumstances." *Id.* at 704.

Mr. Conley has alleged that Warden Faucher and Unit Manager Tommarrow deprived him of the opportunity or severely limited his opportunity to engage in meaningful out of cell exercise for a six-day period in February 2018, a twenty-two day period in March 2018, a five-day period in April 2018 and a fifteen-day period in May 2018.

Although Mr. Conley states that the periods occurred during unit lockdowns, it is unclear whether there was a legitimate safety or security basis for the lockdowns or whether Warden Faucher or Unit Manager Tommarrow engaged in "a detailed review" of feasible recreation or exercise alternatives. *Id.* at 705 (internal quotation marks and alterations omitted).

Accordingly, the Court will permit this Eighth Amendment exercise claim to proceed against Warden Faucher and Unit Manager Tommarrow in their individual capacities.

### 4. Isolation

Mr. Conley alleges that he was isolated in his cell during the periods of time that his unit was locked down. The isolation caused him to experience mental distress and seek mental health treatment. *See* Am. Compl. at 4 ¶ 12.

Mr. Conley has plausibly alleged that the periods of time during which Warden Faucher and Unit Manager Tommarrow required him to be isolated in his cell seriously impacted his mental health. Thus, he has met the objective prong of the Eighth Amendment standard. *See*

11

*Farmer*, 511 U.S. at 834 (requiring allegations of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[]" or posed "a substantial risk of serious harm" to his health or safety).

Mr. Conley asserts that he made Warden Faucher and Unit Manager Tommarrow aware of how his confinement in a cell for 23 hours a day affected his mental health. This allegation is sufficient to meet the subjective prong of the Eighth Amendment standard. *See Salahuddin*, 467 F.3d at 280 (requiring allegations that the defendants acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law.").

Accordingly, the Court will permit the Eighth Amendment claim that Warden Faucher and Unit Manager Tommarrow isolated Mr. Conley in his cell for 23 hours a day during a six-day period in February 2018, a twenty-two day period in March 2018, a five-day period in April 2018 and a fifteen-day period in May 2018 to proceed.

### 5. Telephone Use

"[L]oss of privileges, in general, does not amount to infliction of cruel and unusual punishment; and loss of visitation and telephone privileges is no exception to this rule." *Marrero v. Weir*, No. 3:13-CV-0028 (RNC), 2014 WL 4799228, at *3 (D. Conn. Sept. 26, 2014); *see id.* (collecting cases).

Mr. Conley alleges that for five days in April 2018, he was deprived of access to a telephone. Mr. Conley asserts no facts to suggest that he could not communicate with family or friends by mail or that he could not have visitors during this five-day period. *See* Am. Compl. at 4 ¶ 9. The five day loss of phone usage is a "minimal restriction[]" that does not amount to a "deprivation[] that the Supreme Court has deemed sufficiently serious under the Eighth

Amendment, such as the unnecessary and wanton infliction of pain or deprivations denying the minimal civilized measure of life's necessities." *Rivera v. Senkowski*, 62 F.3d 80, 85 (2d Cir. 1995) (internal quotation marks omitted).

Accordingly, this Eighth Amendment conditions claim, as it relates to telephone usage, will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## ORDERS

The Court enters the following orders:

**(1)** The requests seeking monetary damages for violations of Mr. Conley's Eighth Amendment rights by the defendants in their official capacities are **DISMISSED** under 28 U.S.C. § 1915A(b)(2). The request for declaratory relief, all Eighth Amendment claims asserted against SRG Coordinator Aldi, and the Eighth Amendment conditions claims related to the leaky and smelly toilet, the lack of cold running water, the clogged sink, and the denial of access to a telephone are **DISMISSED** under 28 U.S.C. § 1915A(b)(1). The Court will permit the Eighth Amendment claim related to Mr. Conley's confinement in his cell for 23 hours a day during a six-day period in February 2018, a twenty-two day period in March 2018, a five-day period in April 2018, and a fifteen-day period in May 2018 and the Eighth Amendment claim related to the deprivation of meaningful out of cell exercise during these same periods to proceed against Warden Faucher and Unit Manager Tommarrow in their individual capacities and the Eighth Amendment shower deprivation claim to proceed against Unit Manager Tommarrow in his individual capacity.

**(2)** The Clerk of Court shall verify the current work addresses of Warden Faucher and Lieutenant/Unit Manager Tommarrow and mail a copy of the Amended Complaint, this

Order, and a waiver of service of process request packet to each defendant in his individual capacity at his confirmed address. By **July 9, 2021**, the Clerk of Court shall report to the Court on the status of the requests. If either Defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(3)** Defendants Tommarrow and Faucher shall file their response to the Amended Complaint, either an Answer or motion to dismiss, by **August 13, 2021**. If the Defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

**(4)** Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed by **October 29, 2021**. Discovery requests need not be filed with the Court.

**(5)** All motions for summary judgment shall be filed by **December 3, 2021**.

**(6)** If Mr. Conley changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Mr. Conley should write PLEASE NOTE MY NEW ADDRESS on the notice. Putting a new address on a letter without indicating that it is a new address is insufficient. If Mr. Conley has more than one pending case, he should indicate all case numbers in the notification of change of address. Mr. Conley should also notify the attorney for the defendants of his new address.

**(7)** Mr. Conley shall utilize the Prisoner E-filing Program when filing documents with the Court. Mr. Conley is advised that the Program may be used only to file documents with

the Court. Local Court Rule 5(f) provides that discovery requests are not to be filed with the Court. Therefore, discovery requests must be served on defendants' counsel by regular mail.

**(8)** The Clerk of Court shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy of the Standing Order to the parties. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

**(9)** The Clerk of Court shall send a courtesy copy of the complaint, and this order to the Department of Correction Legal Affairs Unit.

SO ORDERED at Bridgeport, Connecticut this 4th day of June, 2021.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE